MANATT, PHELPS & PHILLIPS, LLP
Jill M. Pietrini (Bar No. CA 138335)
  jpietrini@manatt.com
Barry E. Mallen (Bar No. CA 120005)
  bmallen@manatt.com
Paul A. Bost (Bar No. CA 261531)
  pbost@manatt.com
11355 West Olympic Boulevard
Los Angeles, CA 90064-1614
Telephone: (310) 312-4000
Facsimile: (310) 312-4224

E-FILED: 3/25/10

*Attorneys for Plaintiff*
SUMMIT ENTERTAINMENT, LLC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| SUMMIT ENTERTAINMENT, LLC, a Delaware limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> TOPICS ENTERTAINMENT, INC., a Washington corporation; GREG JAMES, an individual; RALPH GALVAN, an individual; CHRIS ABERNATHY, an individual; and DOES 1-10, inclusive, <br><br> Defendants. | Case No. CV10-00939 GHK (Ex) <br><br> **SECOND AMENDED COMPLAINT FOR FALSE DESIGNATION OF ORIGIN, TRADEMARK INFRINGEMENT, TRADEMARK DILUTION, COPYRIGHT INFRINGEMENT, AND UNFAIR COMPETITION** <br><br> **(DEMAND FOR JURY TRIAL)** |

Plaintiff Summit Entertainment, LLC ("Summit"), for its second amended complaint against defendants Topics Entertainment, Inc. ("Topics"), Greg James ("James"), Ralph Galvan ("Galvan"), and Chris Abernathy ("Abernathy") (collectively, "Defendants"), and Does 1-10, alleges as follows:

## JURISDICTION

1.     This action arises under the trademark and anti-dilution laws of the United States, 15 U.S.C. § 1125, *et seq.*; the Copyright Act of 1976, as amended, 17 U.S.C. § 101, *et seq.*; and under the statutory and common law of unfair

1    competition.  This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) and

2    (b), and § 1367, 15 U.S.C. § 1121, and 17 U.S.C. § 501.  This action arises under

3    the laws of the United States.

4        2.    Venue is proper under 28 U.S.C. §§ 1391(b) and (c) in this case

5    because Summit resides in this District, and on information and belief, Defendants

6    are subject to personal jurisdiction in this District, and a substantial part of the

7    events or omissions giving rise to Summit's claims occurred in this District.

8                                    **PARTIES**

9        3.    Summit is a Delaware limited liability company having its principal

10    place of business in Santa Monica, California.

11        4.    On information and belief, Topics is a Washington corporation having

12    its principal place of business in Renton, Washington.

13        5.    On information and belief, James is an individual residing in Medina,

14    Washington.

15        6.    On information and belief, Galvan is an individual residing in

16    Washington.

17        7.    On information and belief, Abernathy is an individual residing in Los

18    Angeles, California.

19                                    **FACTS**

20    **Summit's Business, Trademarks, and Copyrights**

21        8.    Since 1991, Summit and its predecessors have been an active

22    participant in the motion picture industry.  Summit finances, produces and

23    distributes films and related entertainment products.

24        9.    Summit has also been involved in licensing trademarks associated with

25    the motion pictures that it produces and distributes for merchandise sales.

26        10.    Summit is the producer and distributor of the highly successful

27    *Twilight* motion picture franchise.  Initially Summit released, the extremely

28    successful and popular "Twilight" film about a teenage girl, Isabella ("Bella")

Swan, who falls in love with a vampire, Edward Cullen.  Bella's other suitor in the film is Jacob Black, a werewolf.  The film was released in the United States on November 21, 2008, and was promoted for many months prior to its release. Summit released a second motion picture in the *Twilight* series, *The Twilight Saga: New Moon* ("*New Moon*"), in the United States on November 20, 2009.  Summit is releasing *New Moon* for sale and rental on digital versatile disc ("DVD") on March 20, 2010.

11.    Summit is the owner of the trademark TWILIGHT in block letters, and in a distinctive stylized font (the "stylized TWILIGHT mark") (collectively "the TWILIGHT Marks") and owns the trademark NEW MOON.  Summit owns 36 pending federal trademark applications to register the TWILIGHT Marks and 19 pending federal trademark applications to register the NEW MOON trademark for use on various types of goods and services.  Summit's stylized TWILIGHT mark is shown below:

12.    Summit has licensed the TWILIGHT Marks and the NEW MOON mark to third parties to sell a wide variety of products, including motion pictures and DVDs, as well as related merchandise.  Summit's licensees first sold motion pictures bearing the TWILIGHT Marks in November of 2008 and DVDs bearing the TWILIGHT Marks in March of 2009.  Summit continues to sell such DVDs.

13.    Summit is the copyright owner of both the screenplay and the motion pictures *Twilight* and *New Moon* (the "*Twilight* Motion Pictures"), as well as all publicity, promotional, unit, and special shoot photography related thereto and the trailers for the *Twilight* Motion Pictures.  Summit has licensed its copyrighted content to third parties for embodiment on DVDs featuring the *Twilight* Motion Pictures, as well as for various items of merchandise related to the *Twilight* Motion Pictures and bearing the TWILIGHT Marks and the NEW MOON mark.

14.   Summit is the exclusive licensee of all rights of every kind and nature in and to or relating to the documentary film *Twilight in Forks:  The Saga of the Real Town* (the "Authorized Documentary"), including but not limited to, theatrical, non-theatrical, home entertainment/DVD, television, on-demand, internet distribution, ship and aircraft rights, publishing, soundtrack, and merchandising, and all other distribution rights ("Exclusive Rights").  The Authorized Documentary was directed, filmed, and produced by Westend Entertainment, LLC, dba Heckelsville Media, LLC ("Heckelsville").  Summit acquired all Exclusive Rights to the Authorized Documentary by way of a written license agreement with Heckelsville entered into on September 4, 2009 ("License Agreement").  The Authorized Documentary is about Forks, Washington, and other locales located in the Pacific Northwest, featured in the *Twilight* Motion Pictures, and documents the relationship between these various locales and the *Twilight* Motion Pictures. Heckelsville created packaging for the Authorized Documentary which included the TWILIGHT Marks in a slightly different font and other copyrightable material ("Original Authorized Documentary Cover").  A true and correct copy of the Original Authorized Documentary Cover is attached hereto as **Exhibit A**. Heckelsville owns the copyright in the Authorized Documentary and in the Original Authorized Documentary Cover.  Pursuant to the License Agreement, Summit is the exclusive licensee of Heckelsville's rights in the Authorized Documentary and the Original Authorized Documentary Cover.  The current packaging and content of the Authorized Documentary incorporates the TWILIGHT Marks and Summit's copyrighted content ("Authorized Documentary Cover").  A true and correct copy of the Authorized Documentary Cover is attached hereto as **Exhibit B**.  Summit owns the copyright and all rights in the Authorized Documentary Cover.  The Authorized Documentary is set to be released for sale to the public by Summit on March 20, 2010.

15.   The copyrights in the Authorized Documentary Cover and the Original

1    Authorized Documentary Cover have been registered with the U.S. Copyright

2    Office.  Application to register the copyright in the Authorized Documentary is

3    pending with the U.S. Copyright Office.  The Application to register the copyright

4    in the Authorized Documentary was filed on January 13, 2010, as a follow-up to the

5    pre-registration for the copyright filed on November 23, 2009.

6    **Defendant and The Infringing Actions**

7        16.    On information and belief, Topics is a multimedia publisher, producer

8    and distributor of, among other things, software and DVDs.

9        17.    On information and belief, Topics distributes its DVDs widely in

10   various outlets throughout the United States including general retail stores, media

11   retail stores, internet retail stores, bookstores, and other retailers.  In addition,

12   Defendant operates a website at <www.topics-ent.com> and markets and sells its

13   DVDs from that website as well.

14       18.    On information and belief, James is the President and Chief Executive

15   Officer of Topics, and directs the activities of Topics.

16       19.    In or around August, 2009, Topics, James, and Heckelsville met in

17   person and on the telephone a number of times to discuss the possibility of Topics

18   acquiring distribution rights to the Authorized Documentary.  Initially, James was

19   not familiar with the *Twilight* Motion Pictures and was lukewarm to the Authorized

20   Documentary.  After researching the matter further, James told Heckelsville that

21   Topics was interested in acquiring the Authorized Documentary.  During the course

22   of these meetings, Heckelsville and its principals discussed in detail the prospective

23   contents and storyline of the Authorized Documentary and provided Topics and

24   James with a document detailing the contents thereof (the "One-Sheet"), along with

25   a mock DVD cover for the Authorized Documentary, the actual Authorized

26   Documentary trailer with footage from the Authorized Documentary, and a retail

27   box sample of the Authorized Documentary.  The mock cover included another,

28   less detailed synopsis of the Authorized Documentary and four framed

photographs, including photographs of a red truck known as Bella's Truck and the Welcome Sign in Forks, Washington.  True and correct copies of the One-Sheet and the mock cover for the Original Authorized Documentary are attached hereto as **Exhibit C** and the aforementioned **Exhibit A**, respectively.

20.     On or around August 31, 2009, Heckelsville informed Topics that it was going to enter into a deal with Summit for Summit to acquire the Exclusive Rights to the Authorized Documentary, and not with Topics.

21.     Summit has scheduled the release of the Authorized Documentary on DVD on March 20, 2010 in conjunction with its release of the *New Moon* DVD on March 20, 2010.  In November 2009, Summit began soliciting orders from retailers desiring to stock and sell the Authorized Documentary.  On January 15, 2010, Summit officially announced the availability of the Authorized Documentary, and retailers who purchased the Authorized Documentary were permitted to take pre-orders for the Authorized Documentary from customers, who are then shipped the Authorized Documentary on or about its release date.  These advertisements and listings included an image of the updated Authorized Documentary's DVD cover. The Authorized Documentary Cover prominently features the title of the Authorized Documentary and an image of a moonlit forest of trees.  The back of the Authorized Documentary Cover features a synopsis of the Authorized Documentary and four photographs, including photographs of Bella's Truck and the Welcome Sign in Forks, Washington.

22.     The Authorized Documentary's manufacturer's suggested retail price is $19.99.

23.     On January 27, 2010, Summit learned for the first time that Defendants had sent copies of a flyer (the "Flyer") to national retailers, including, but not limited to, Best Buy, Sam's Club, and Target, advertising its impending sale of a documentary it was distributing for sale on DVD entitled *Forks:  Bitten by Twilight* (the "Topics Documentary").  A true and correct copy of the Flyer is attached

hereto as **Exhibit D**.  The Flyer depicts the DVD's cover (the "Topics Documentary's Cover") and a synopsis of the contents of the Topics Documentary. The Topics Documentary's Cover features the title *Forks:  Bitten by Twilight*, in which the term TWILIGHT is the most prominent word.  TWILIGHT is featured in the middle of the Cover in red text, and is substantially larger than any of the other words featured on the Cover.  It is used in a similar manner on the binding of the Cover.  Topics uses the TWILIGHT trademark in a confusingly similar font as the stylized TWILIGHT mark used by Summit for the *Twilight* Motion Pictures, on Twilight-licensed merchandise, and on the Authorized Documentary.  For comparison, Topics' infringing use appears on the right.

| **Summit's Stylized Mark** | **Heckelsville Font** | **Topics' Infringing Use** |
|---|---|---|
|  |  |  |

24.     Like the Authorized Documentary, the Topics Documentary's Cover also features an image of a moonlit forest of trees, and the following quotation attributed to the author, Stephenie Meyer, of the *Twilight* novel on which the *Twilight* motion picture is based:  ". . . And there, right where I wanted it to be, was a tiny town called 'Forks.'"  On information and belief, Topics did not receive Ms. Meyer's permission to use the quote on the Cover.  The Flyer features a synopsis of the Topics Documentary and four framed photographs in a row, including photographs of Bella's Truck and the Welcome Sign in Forks, the banner "Special Collector's Edition", and a synopsis of the content of the Topics Documentary. The Flyer lists the Topics Documentary's manufacturer's suggested retail price as $19.99.

25.     Defendants have been actively selling the Topics Documentary to national retailers, including Best Buy, Sam's Club, and Target, and various online retailers, some of which are offering the Topics Documentary for pre-sale to the

1   public now, for delivery on or about the release date.  Defendants are planning to

2   release the Topics Documentary on March 16, 2010, just four days before the

3   release of the *New Moon* DVD and the Authorized Documentary on March 20,

4   2010.  Summit has been informed by such retailers that Topics has rushed its

5   release date to coincide with the release date of the *New Moon* DVD and the

6   Authorized Documentary on March 20, 2010.  The *New Moon* DVD and

7   Authorized Documentary will be sold at some of the same retail outlets as the

8   Topics Documentary.

9        26.    Topics did not receive authorization or permission from Summit to use

10   its TWILIGHT trademark in any format.

11        27.    Topics' unauthorized use of the TWILIGHT mark and use of a cover

12   that is confusingly or substantially similar to the Authorized Documentary Cover

13   trades on the intellectual property of Summit, including the TWILIGHT Marks and

14   has already resulted in confusion as to the source of the Topics Documentary and is

15   likely to result in continued confusion amongst retailers and the general public.

16        28.    On information and belief, the Topics Documentary was filmed and

17   directed by Galvan and Abernathy.  On information and belief, per the terms of

18   their agreement, Topics was assigned the copyright in the Topics Documentary

19   from Galvan and Abernathy, or owns it as a work for hire.  Galvan is an employee

20   of Topics, and has been so since well before August 2009.

21        29.    On information and belief, the Topics Documentary's Cover features

22   content infringing Summit's copyrights in the Authorized Documentary Cover

23   and/or its Exclusive Rights in the Original Authorized Documentary Cover.

24        30.    On January 29, 2010, Summit mailed and faxed Topics a letter

25   demanding that Topics cease and desist its infringing activities.  A true and correct

26   copy of Summit's demand letter to Topics is attached hereto as **Exhibit E**.  James

27   responded, on behalf of Topics, by telephone to Summit on the afternoon of

28   January 29, 2010.  James admitted to engaging in negotiations to distribute the

Authorized Documentary with Heckelsville.  James also admitted that Topics' use of the TWILIGHT mark was unauthorized and similar to the manner in which Summit uses the TWILIGHT mark on DVDs and other merchandise.  James denied that Topics had committed copyright infringement.

31.    In subsequent conversations, James claimed that the Topics Documentary was produced by an independent producer named Ralph Galvan and Galvan's partner.  Galvan also made these representations to Summit in telephone conversations the week of February 1, 2010.  Summit later discovered that Galvan is an employee of Topics, despite James' and Galvan's representations otherwise. James also claimed that Topics had redesigned the Topics Documentary's Cover so that it was allegedly no longer infringing.  The image of the original Topics Documentary's Cover appears on various internet retailers' websites, and is being pre-sold to customers before its release date of March 16, 2010.  No changes appear to have been made to the Topics Documentary's Cover.

32.    Topics' actions were willful.  Topics is a sophisticated media company well acquainted with federal and common law intellectual property laws, and Topics knew that it had to receive Summit's permission or authorization to use its copyrighted material and/or its trademarks.  Topics only decided to film the Topics Documentary after meeting with Heckelsville, discussing in detail with Heckelsville the contents of the Authorized Documentary, viewing the One-Sheet and original mock cover to the Authorized Documentary, and then not being given the right to acquire the Authorized Documentary.  Galvan and Abernathy did not begin filming the documentary until, at the earliest, October 2009.

33.    Defendants are continuing to promote, advertise, and sell the Topics Documentary, despite Summit's demand to stop, and have informed Summit that they intend to continue.

/ / /

/ / /

# FIRST CAUSE OF ACTION

## (False Designation of Origin – 15 U.S.C. § 1125(a))

34. Summit repeats and realleges each and every allegation of paragraphs 1 through 33, above, as though fully set forth herein.

35. Defendants' actions as alleged herein constitute a false designation of origin in violation of 15 U.S.C. § 1125(a).

36. The use of the TWILIGHT Marks and the use of the Topics Documentary's Cover by Defendants constitutes a false description or representation that wrongfully and falsely designates the Topics Documentary as originating from Summit, or being associated or connected with Summit or the *Twilight* Motion Pictures, or licensed, approved, or authorized by Summit.

37. As a direct and proximate result of Defendants' wrongful acts, Summit has suffered and continues to suffer and/or is likely to suffer damage to its trademarks, business reputation, and goodwill.  Defendants will continue to use and/or will restart the use of, unless restrained, the TWILIGHT Marks and the Topics Documentary's Cover and will cause irreparable damage to Summit. Summit has no adequate remedy at law and is entitled to an injunction restraining Defendants, their officers, agents, and employees, and all persons acting in concert with Defendants, from engaging in further acts of false designation of origin.

38. Summit is further entitled to recover from Defendants the actual damages that it sustained and/or is likely to sustain as a result of Defendants' wrongful acts.  Summit is presently unable to ascertain the full extent of the monetary damages that it has suffered and/or is likely to sustain by reason of Defendants' acts of false designation of origin.

39. Summit is further entitled to recover from Defendants the gains, profits, and advantages that Defendants have obtained as a result of its wrongful acts.  Summit is presently unable to ascertain the extent of the gains, profits, and advantages that Defendants have realized by reason of their acts of false

1   designation of origin.

2        40.   Because of the willful nature of Defendants' wrongful acts, Summit is

3   entitled to an award of treble damages and increased profits pursuant to 15 U.S.C.

4   § 1117 and destruction of the Topics Documentary under 15 U.S.C. § 1118.

5        41.   Summit is also entitled to recover its attorneys' fees and costs of suit

6   pursuant to 15 U.S.C. § 1117.

7                          **SECOND CAUSE OF ACTION**

8                            **(Trademark Infringement)**

9        42.   Summit repeats and realleges each and every allegation of paragraphs

10   1 through 41, above, as though fully set forth herein.

11        43.   Defendants have used in commerce, without Summit's permission, the

12   TWILIGHT Marks in a manner that is likely to cause confusion with respect to the

13   source and origin of the Topics Documentary and is likely to cause confusion or

14   mistake and to deceive purchasers as to the affiliation, connection, or association of

15   Summit with Defendants and/or their products.

16        44.   Defendants' acts constitute infringement of the TWILIGHT Marks in

17   violation of the common law.

18        45.   As a direct and proximate result of Defendants' wrongful acts, Summit

19   has suffered and continues to suffer and/or is likely to suffer damage to its

20   trademark, business reputation, and goodwill.  Defendants will continue to use

21   and/or will restart the use of, unless restrained, the TWILIGHT Marks and will

22   cause irreparable damage to Summit.  Summit has no adequate remedy at law and is

23   entitled to an injunction restraining Defendants, their officers, agents, and

24   employees, and all persons acting in concert with Defendants, from engaging in

25   further acts of infringement.

26        46.   Summit is further entitled to recover from Defendants the actual

27   damages that it sustained and/or is likely to sustain as a result of Defendants'

28   wrongful acts.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

47.     Summit is further entitled to recover from Defendants the gains, profits, and advantages that Defendants have obtained as a result of their wrongful acts.

48.     Because of the willful nature of Defendants' wrongful acts, Summit is entitled to an award of punitive damages under the common law.

### THIRD CAUSE OF ACTION

### (Dilution -- 15 U.S.C. § 1125(c); Cal. Bus. & Prof. Code § 14247)

49.     Summit repeats and realleges each and every allegation of paragraphs 1 through 48, above, as though fully set forth herein.

50.     Summit has used the TWILIGHT Marks to identify its products, including DVDs, relating to the *Twilight* Motion Pictures before Defendants began promoting and selling the Topics Documentary or otherwise used the TWILIGHT Marks.  The TWILIGHT Marks are inherently distinctive and have acquired distinction through Summit's extensive, continuous, and exclusive use of the TWILIGHT Marks.

51.     The TWILIGHT Marks are famous and distinctive within the meaning of 15 U.S.C. §§ 1125(c)(1) and 1127 and Cal. Bus. & Prof. Code § 14247.

52.     Defendants' use of the TWILIGHT Marks is likely to dilute the distinctive quality of Summit's mark in violation of 15 U.S.C. § 1125(c) and Cal. Bus. & Prof. Code § 14247.

53.     Defendants' acts complained of herein are likely to damage Summit irreparably.  Summit has no adequate remedy at law for such wrongs and injuries. The damage to Summit includes harm to its trademarks, goodwill, and reputation that money cannot compensate.  Summit is, therefore, entitled to a preliminary and permanent injunction enjoining Defendants' use of the TWILIGHT Marks in connection with the promotion, advertisement and sale of any goods by Defendants.

54.     Summit is further entitled to recover from Defendants its actual damages sustained by Summit as a result of Defendants' wrongful acts.  Summit is

1   presently unable to ascertain the full extent of the monetary damages it has suffered
2   by reason of Defendants' acts of dilution.

3        55.   Summit is further entitled to recover from Defendants the gains,
4   profits, and advantages Defendants have obtained as a result of their wrongful acts.
5   Summit is presently unable to ascertain the extent of the gains, profits and
6   advantages Defendants have realized by reason of Defendants' willful acts of
7   dilution.

8        56.   Because of the willful nature of Defendants' actions, Summit is
9   entitled to all remedies available under 15 U.S.C. §§ 1117 and 1118.

10                      **FOURTH CAUSE OF ACTION**
11                        **(Copyright Infringement)**

12       57.   Summit repeats and realleges each and every allegation of paragraphs 1
13   through 56, above, as though fully set forth herein.

14       58.   The Original Authorized Documentary Cover and the Authorized
15   Documentary Cover are original works of authorship owned by Summit and are
16   copyrightable subject matter under the laws of the United States.  The Original
17   Authorized Documentary Cover was registered with the U.S. Copyright Office,
18   effective February 9, 2010, as Reg. No. VA 1-702-779.  The Authorized
19   Documentary Cover was registered with the U.S. Copyright Office, effective
20   February 5, 2010, as Reg. No. VA 1-703-630.  These registrations are valid and
21   subsisting.  True and correct records of both registrations are attached hereto as
22   **Exhibit F**.  The Original Authorized Documentary Cover and the Authorized
23   Documentary Cover were fixed in a tangible medium by printing of the images
24   and/or by uploading the images to a hard drive and publishing the images bearing
25   the Authorized Documentary Cover and the Original Authorized Documentary
26   Cover.

27       59.   Summit is the copyright owner of the Authorized Documentary Cover,
28   and at all times relevant to the complaint, Summit is and has been the sole exclusive

authorized licensor of the Authorized Documentary Cover in the United States in connection with the issuance of licenses for use of the Authorized Documentary Cover.  Summit is the exclusive licensee of all rights associated with the Original Authorized Documentary Cover pursuant to the License Agreement.

60.   Defendants had access to the Original Authorized Documentary Cover through their aforementioned detailed discussions with Heckelsville regarding the contents of the Authorized Documentary, and receipt of materials relating to the Authorized Documentary and receipt of the Original Authorized Documentary Cover from Heckelsville prior to making the Topics Documentary.  Defendants had access to the Authorized Documentary Cover through its proliferation over the internet, which Galvan admits having reviewed.

61.   Defendants have violated Summit's Exclusive Rights in and to the Original Authorized Documentary Cover and/or the Authorized Documentary Cover by unlawfully using, reproducing, displaying, and distributing them in the Topics Documentary's Cover without authorization and by unlawfully preparing derivative works from the Original Authorized Documentary Cover and/or the Authorized Documentary Cover.

62.   Summit is informed and believes and on that basis alleges that Defendants had full knowledge that their acts were wrongful and unlawful and have continued to infringe said copyrights, throughout the United States and various other territories of the world.  Defendants continued to market and display the Topics Documentary's Cover and sell the Topics Documentary after Summit sent to Defendants the first cease and desist letter informing Topics that Defendants' use of the Original Authorized Documentary Cover and/or the Authorized Documentary Cover infringed its copyrights and/or Exclusive Rights, and after Topics and James represented that they were going to alter the Topics Documentary's Cover as to make it allegedly non-infringing.  Defendants' infringing acts were and continue to be committed willfully.

63.    By reason of the foregoing, Summit has suffered damages in an amount to be determined at trial, and is entitled, at its election, to either (a) all damages suffered by Summit, along with all gains, profits and advantages derived by Defendants from the acts of infringement, plus exemplary and punitive damages in amounts to be proven at trial, or (b) statutory damages as provided for in the Copyright Act of the United States.

64.    Summit is also entitled to attorneys' fees and a preliminary and permanent injunction under the Copyright Act.

## FIFTH CAUSE OF ACTION

### (Statutory and Common Law Unfair Competition)

65.    Summit repeats and realleges each and every allegation of paragraphs 1 through 64, above, as though fully set forth herein.

66.    By reason of the foregoing, Defendants have been, and are, engaged in "unlawful, unfair or fraudulent business practices" in violation of §§ 17200 *et seq.* of the California Bus. & Prof. Code and acts of unfair competition in violation of the common law.

67.    Defendants' acts complained of herein have damaged and will continue to damage Summit irreparably.  Summit has no adequate remedy at law for these wrongs and injuries.  The damage to Summit includes harm to its trademarks, goodwill, and reputation in the marketplace that money cannot compensate. Summit is therefore entitled to:  (a) injunctive relief restraining and enjoining Defendants and their agents, servants, employees, and attorneys, and all persons acting thereunder, in concert with, or on their behalf, from using the TWILIGHT Marks and the Topics Documentary's Cover, any colorable imitation or variation thereof, or any mark, name, symbol, or logo which is confusingly similar thereto, in connection with the marketing or sale of any goods or services by Defendants; (b) injunctive relief restraining and enjoining Defendants and their agents, servants, employees, and attorneys, and all persons acting thereunder, in concert with, or on

their behalf, from reproducing content or artwork owned by Summit in connection

with the marketing or sale of any goods or services by Defendants; (c) Summit's

actual damages sustained as a result of Defendants' wrongful acts; (d) an

accounting of Defendants' profits from their sales of any products bearing the

TWILIGHT Marks or containing copyrighted content or other artwork owned by

Summit, or any other goods which make use of the TWILIGHT Marks or content

or other artwork owned by Summit; (e) the award of Defendants' unjust profits, as

well as sums sufficient to compensate Summit for all harm suffered as a result of

Defendants' conduct; and (f) punitive damages.

### **PRAYER FOR RELIEF**

WHEREFORE, Summit prays that this Court enter judgment against

Defendants as follows:

1.      Finding that Defendants have violated 15 U.S.C. § 1125(a) and the

common law, have infringed the TWILIGHT Marks under the common law, have

infringed Summit's copyrights under 17 U.S.C. § 501, have violated 15 U.S.C.

§ 1125(c)(1) and Cal. Bus. & Prof. Code § 14247, and have violated Cal. Bus. &

Prof. Code § 17200 and the common law by engaging in unlawful, unfair, and

fraudulent business practices;

2.      Ordering that Defendants and their subsidiaries, officers, agents,

servants, directors, employees, servants, partners, representative, assigns,

distributors, successors, related companies, and attorneys and all persons in active

concert or participation with Defendants or with any of the foregoing be enjoined

preliminarily during the pendency of this action and permanently thereafter from:

a.      Manufacturing, transporting, promoting, importing, advertising,

publicizing, distributing, offering for sale, or selling any goods bearing the

TWILIGHT Marks or the Topics Documentary's Cover or any other mark, name,

symbol, or logo which is likely to cause confusion or to cause mistake or to deceive

persons into the erroneous belief that any goods that Defendants caused to enter the

1   stream of commerce are sponsored, licensed, or endorsed by Summit, are

2   authorized by Summit, or are connected or affiliated in some way with Summit, the

3   *Twilight* Motion Pictures, or the Authorized Documentary;

4           b.      Manufacturing, transporting, promoting, importing, advertising,

5   publicizing, distributing, offering for sale, or selling any goods bearing the

6   TWILIGHT Marks or any other mark, name, symbol, or logo that is a copy or

7   colorable imitation of, incorporates, or is confusingly similar to the TWILIGHT

8   Marks;

9           c.      Falsely implying Summit's endorsement of Defendants' goods

10   or engaging in any act or series of acts which, either alone or in combination,

11   constitutes unfair methods of competition with Summit and from otherwise

12   interfering with, or injuring the TWILIGHT Marks or the goodwill associated

13   therewith;

14           d.      Copying, displaying, featuring, or using the Original

15   Authorized Documentary Cover or the Authorized Documentary Cover, or any

16   other copyrightable subject matter from or related to the Original Authorized

17   Documentary Cover or the Authorized Documentary Cover, or any works

18   substantially similar thereto, or engaging in any act in violation of Summit's

19   copyrights, including but not limited to, selling, promoting, advertising, or

20   distributing the Topics Documentary's Cover;

21           e.      Engaging in any act which is likely to dilute the distinctive

22   quality of the TWILIGHT Marks and/or injures Summit's business reputation;

23           f.      Representing or implying that Defendants are in any way

24   sponsored by, affiliated with, or endorsed or licensed by Summit; or

25           g.      Knowingly assisting, inducing, aiding, or abetting any other

26   person or business entity in engaging in or performing any of the activities referred

27   to in paragraphs 2(a) to (f) above.

28        3.      Ordering that Summit is the exclusive owner of the TWILIGHT Marks

1    and that such marks are valid;

2        4.    Ordering that Summit is the exclusive owner of the copyright in the

3    Authorized Documentary Cover and that such copyright is valid.

4        5.    Ordering that Summit is the exclusive licensee of the copyright in the

5    Original Authorized Documentary Cover and that such copyright is valid.

6        6.    Ordering that Defendants be required to recall and deliver to Summit

7    for destruction all DVDs of the Topics Documentary (including but not limited to

8    DVDs that have been produced even if they have not yet been released), which bear

9    the TWILIGHT Marks, the Topics Documentary's Cover, or any other trademarks,

10   names, logo, trade dress, or packaging that are confusingly or substantially similar

11   to the TWILIGHT Marks and/or which contain copyrighted content embodied in

12   the Original Authorized Documentary Cover, and the Authorized Documentary

13   Cover, or other copyrighted works, the copyrights to which are owned by Summit;

14       7.    Granting an award of damages suffered by Summit according to proof

15   at the time of trial;

16       8.    Ordering that Defendants account to Summit for any and all profits

17   earned as a result of Defendants' acts of infringement in violation of Summit's

18   rights under the Lanham Act, the Copyright Act, Cal. Bus. & Prof. Code  § 17200,

19   *et seq.*, and the common law;

20       9.    Granting an award of three times the amount of compensatory

21   damages and increased profits pursuant to 15 U.S.C. § 1117;

22       10.   Granting an award of statutory damages pursuant to 17 U.S.C.

23   § 504(c);

24       11.   Granting an award of punitive damages for the willful and wanton

25   nature of Defendant's aforesaid acts;

26       12.   For pre-judgment interest on any recovery by Summit;

27       13.   Granting an award of Summit's costs, expenses, and reasonable

28   attorneys' fees; and

14.   Granting such other and further relief as is just and proper.

Respectfully submitted,

MANATT, PHELPS & PHILLIPS, LLP

Dated:  March 23, 2010            By:/s/ Jill M. Pietrini
                                        Jill M. Pietrini
                                        Barry E. Mallen
                                        Paul A. Bost
                                        *Attorneys for Plaintiff*
                                        SUMMIT ENTERTAINMENT, LLC

## JURY DEMAND

Summit demands a trial by jury of all issues triable by jury.

Respectfully submitted,

MANATT, PHELPS & PHILLIPS, LLP

Dated:  March 23, 2010            By:/s/ Jill M. Pietrini
                                        Jill M. Pietrini
                                        Barry E. Mallen
                                        Paul A. Bost
                                        *Attorneys for Plaintiff*
                                        SUMMIT ENTERTAINMENT, LLC

300072976.2